UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

8375 HONEYTREE BOULEVARD
HOLDINGS, LLC, a Maryland limited
liability company,

      Plaintiff,

Case No. 11-12431

Honorable Patrick J. Duggan

v.

JEFFREY S. STARMAN, FRANCIS
CLARK, and ROGER THORNBURG,
      Defendants.
_____

ROGER THORNBURG,
      Defendant/Third-Party Plaintiff,

v.

MADISON EQUITIES I, LLC, a Michigan
limited liability company,
      Third-Party Defendant.
_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on March 2, 2012.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                   U.S. DISTRICT COURT JUDGE

8375 Honeytree Boulevard Holdings, LLC ("Plaintiff") filed this action on June 6, 2011, seeking to recover on a guaranty agreement executed by Jeffrey Starman, Francis Clark, and Roger Thornburg (collectively, "Guarantors"). Presently before the Court is Plaintiff's motion for partial summary judgment. The matter has been fully briefed, and

on January 17, 2012, the Court notified the parties that it was dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). For reasons set forth below, the Court grants Plaintiff's motion.

## I. Factual and Procedural Background

TMG Canton Crossing, LLC ("Borrower") owns an apartment complex located in Canton, Michigan. On February 14, 2007, Borrower obtained a commercial mortgage loan of $29,280,000 from Countrywide Commercial Real Estate Finance, Inc. Starman, as the agent of Borrower, executed a number of documents that day, including: (1) a Loan Agreement; (2) a Promissory Note; and (3) a mortgage on the property. Guarantors, who are individuals holding indirect ownership interests in Borrower, executed a Guaranty of Recourse Obligations ("Guaranty"). *See* Pl.'s Br. Ex. 5. The loan and loan documents were assigned to Plaintiff,[1] and Plaintiff is the current holder of the mortgage, Loan Agreement, Promissory Note, and Guaranty.

Borrower has not made payments on the loan since July 8, 2010. In October 2010, Plaintiff's predecessor-in-interest sent written notice of the default to Borrower and Guarantors, accelerated the loan's maturity, and demanded payment of all amounts owed under the loan. Plaintiff and Borrower entered into negotiations regarding Borrower's

---

[1] The loan and loan documents were first assigned to LaSalle Bank National Association, as Trustee for the Registered Holders of ML-CFC Commercial Mortgage Trust 2007-6, Commercial Mortgage Pass-Through Certificates, Series 2007-6 ("LaSalle, as Trustee"). LaSalle, as Trustee, assigned the loan and loan documents to U.S. Bank, National Association, as Trustee for the Registered Holders of ML-CFC Commercial Mortgage Trust 2007-6, Commercial Mortgage Pass-Through Certificates, Series 2007-6 ("the Trust"). The Trust, in turn, assigned the loan and loan documents to Plaintiff.

obligations, but these negotiations were apparently unsuccessful. Plaintiff commenced foreclosure proceedings, and a foreclosure sale was scheduled for January 13, 2011.

Plaintiff subsequently discovered ten construction liens that had been filed against the property. *See* Pl.'s Br. Ex. 9 ¶ 7a-j. One of the lien claimants had filed an action to foreclose on its lien, and Plaintiff intervened in this suit to protect its interest. The sale was adjourned on a week-to-week basis to allow for resolution of these issues, and was eventually scheduled for May 19, 2011.

Two days before the scheduled foreclosure sale, a petition for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code was filed on Borrower's behalf in the Bankruptcy Court for the Eastern District of Michigan. The sale was not held on the scheduled date due to the filing of the bankruptcy petition.

Plaintiff filed this suit on June 6, 2011, asserting that it is entitled to recover from Guarantors under the Guaranty. Thornburg then filed a motion in the bankruptcy court to dismiss the bankruptcy case, arguing that he never consented to filing the bankruptcy petition. The bankruptcy court allowed discovery relating to Thornburg's motion, and Borrower subsequently withdrew its answer to the motion to dismiss. Thornburg and Borrower stipulated to the entry of an order granting the motion to dismiss, and the bankruptcy court entered the order and dismissed the bankruptcy case on December 1, 2011. Plaintiff has now moved for summary judgment with respect to Count I, "Judgment on Guaranty (Bankruptcy)" and Count II, "Judgment on Guaranty (Transfers)."[2]

---

[2] The Complaint also asserts claims under the Guaranty based on unauthorized incurrence of other indebtedness (Count III) and failure to turn over rents (Count IV), but Plaintiff's

3

## II. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2553. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Id.* at 255, 106 S. Ct. at 2513. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to

---

motion for partial summary judgment does not address these claims.

4

particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

### III. Analysis

Because the Court has diversity jurisdiction over this matter, the choice of law rules of the forum state, Michigan, govern. *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 302 (6th Cir. 2008). Michigan courts enforce contractual choice of law provisions, *see Johnson v. Ventura Group, Inc.*, 191 F.3d 732, 739 (6th Cir. 1999), and the parties have selected Michigan law to govern their agreement. Guaranty § 5.3(a), Pl.'s Br. Ex. 5.

Under Michigan law, contracts of guaranty are to be construed like other contracts. *Comerica Bank v. Cohen*, 291 Mich. App. 40, 805 N.W.2d 544, 548 (Mich. Ct. App. 2010). "[U]nambiguous contracts are not open to judicial construction and must be enforced as written." *Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 468, 703 N.W.2d 23, 30 (Mich. 2005). "Courts enforce contracts according to their unambiguous terms because doing so respects the freedom of individuals freely to arrange their affairs via contract." *Id.* at 468, 703 N.W.2d at 30. "'[I]f contractual language is clear, construction of the contract is a question of law for the court.'" *Cohen*, 291 Mich. App. at 46, 805 N.W.2d at 548 (quoting *Meagher v. Wayne State Univ.*, 222 Mich. App. 700, 721, 565 N.W.2d 401, 414 (Mich. App. 1997)).

> "It is a cardinal principle of construction that a contract is to be construed as a whole; that all its parts are to be harmonized so far as reasonably possible; that every word in it is to be given effect, if possible; and that no part is to be taken as eliminated or stricken by some other part unless such a result is fairly inescapable."

5

*Roberts v. Titan Ins. Co.*, 282 Mich. App. 339, 358, 764 N.W.2d 304, 315 (Mich. Ct. App. 2009) (quoting *Laevin v. St. Vincent De Paul Soc.*, 323 Mich. 607, 609-10, 36 N.W.2d 163, 164 (Mich. 1949)).

> Guarantors agreed to liability under the following terms:
>
> Guarantor hereby irrevocably and unconditionally guarantees to Lender the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable. Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor. Each person constituting Guarantor hereunder shall have joint and several liability for the Guaranteed Obligations.

Guaranty § 1.1, Pl.'s Br. Ex. 5. The Guaranty defines the "Guaranteed Obligations" as follows:

> "Guaranteed Obligations" means (i) the Recourse Liabilities (as defined in the Note) and (ii) upon the occurrence of a Full Recourse Event (as defined in the Note), the full amount of the Indebtedness.

Guaranty § 1.2, Pl.'s Br. Ex. 5. Plaintiff asserts that a Full Recourse Event has occurred, triggering Guarantors' liability for the full amount due under the loan. The Promissory Note sets forth three "Full Recourse Events":

> Holder's agreement not to pursue personal liability of Maker as set forth above SHALL BECOME NULL AND VOID and shall be of no force or further effect, and the Indebtedness shall be fully recourse to Maker in the event that one or more of the following occurs (each, a "Full Recourse Event"): (1) an Event of Default occurs under Article 6 of the Loan Agreement; (2) Maker or SPE Equity Owner files a voluntary petition under the U.S. Bankruptcy Code or any other federal or state bankruptcy or insolvency law, or (3) SPE Equity Owner, Guarantor, or any Affiliate, officer, director, or representative of Maker or Guarantor, files or acquiesces in the filing of, or Maker acquiesces in the filing of, an involuntary petition under the U.S. Bankruptcy Code or any other federal or state bankruptcy or insolvency law against Maker.

Promissory Note § 17, Pl.'s Br. Ex. 3 at 9. Plaintiff specifically contends that Borrower

6

allowed a number of construction liens to be placed on the property, and this constituted an "Event of Default" under Article 6 of the Loan Agreement. Plaintiff also contends that Borrower filed a voluntary petition under the Bankruptcy Code. Plaintiff asserts that these occurrences were "Full Recourse Events" triggering Guarantors' liability. The Court will address these arguments in turn.

**A. Construction Liens**

Plaintiff asserts that the imposition of construction liens on the property constituted a "Transfer" other than a "Permitted Transfer" under Article 6 of the Loan Agreement, and was therefore an "Event of Default." Guarantors, in response, argue that Article 6 of the Loan Agreement does not define the term "Event of Default." They conclude that an "Event of Default" cannot occur under Article 6, and it is impossible to trigger a "Full Recourse Event" as a result of an "Event of Default." Defs.' Resp. Br. 15-16. Guarantors' argument lacks merit. The Court must "give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459, 468, 663 N.W.2d 447, 453 (Mich. 2003). The definition of "Full Recourse Event" specifically includes "an Event of Default . . . under Article 6 of the Loan Agreement." Promissory Note § 17, Pl.'s Br. Ex. 3 at 9. Guarantors' interpretation of the contract renders this clause meaningless, but a reasonable interpretation exists that would give effect to this clause. Article 8 of the Loan Agreement defines "Event of Default" to include "the occurrence of a Transfer that is not a Permitted Transfer." Loan Agreement § 8.1(d), Pl.'s Br. Ex. 2. As Plaintiff notes, Article 6 is the only portion of the Loan Agreement addressing Transfers. Thus, the term

7

"Event of Default" certainly applies to Article 6. The Court concludes that a "Transfer" other than a "Permitted Transfer" would constitute an "Event of Default" under Article 6.

Guarantors contend that the construction liens filed against the property are not "Transfers" as defined by Article 6. Guarantors therefore assert that the imposition of a construction lien is not an "Event of Default" that would trigger full recourse liability. This argument also lacks merit. "Transfer" is defined as:

> (a) any conveyance, transfer, sale, Lease, assignment or Lien, whether by operation of law or otherwise, of, on or affecting (i) all or any portion of the Property, or (ii) any direct or indirect legal or beneficial interest in Borrower (including any profit interest or the issuance of any new direct or indirect Equity Interest in Borrower), and (b) any change in Control of Borrower.

Loan Agreement § 1.1, Pl.'s Br. Ex. 2. Plaintiff argues that the construction liens on the property were "Liens" within the meaning of this provision. The Loan Agreement also defines "Lien":

> "Lien" means any mortgage, deed of trust, deed to secure debt, lien pledge, easement, restrictive covenant, hypothecation, assignment, security interest, conditional sale or other title retention agreement, financing lease having substantially the same economic effect as any of the foregoing, or financing statement or similar instrument.

*Id.* Because this definition includes a "similar instrument," the list of instruments is not exclusive. These listed instruments all encumber the title of real estate, and it cannot be disputed that construction liens serve the same purpose. "[A] construction lien is an encumbrance on the title to the property and encourages payment to resolve disputes regarding services performed on the property and acts as security for contractors who perform the services." *E.R. Zeiler Excavating, Inc. v. Valenti, Trobec & Chandler, Inc.*, 270 Mich. App. 639, 646, 717 N.W.2d 370, 374 (Mich. Ct. App. 2006) (citing Michigan

8

Compiled Laws § 570.1107(2)). The Court is satisfied that a construction lien is a "Lien" as defined in the Loan Agreement. The imposition of a construction lien on the property therefore constitutes a "Transfer" under Article 6.

Guarantors have not asserted that the construction liens were "Permitted Transfers," and "the occurrence of a Transfer that is not a Permitted Transfer" is an "Event of Default." Loan Agreement § 8.1(d). Thus, the imposition of a construction lien was an "Event of Default" under the Loan Agreement and a "Full Recourse Event" as defined in the Guaranty. Under the Guaranty's terms, the "Guaranteed Obligations" therefore consist of "the full amount of the Indebtedness." *See* Guaranty § 1.2, Pl.'s Br. Ex. 5. Guarantors "irrevocably and unconditionally" guaranteed "the payment and performance of the Guaranteed Obligations." Guaranty § 1.1, Pl.'s Br. Ex. 5. They are required by the terms of the Guaranty to make payment of the full amount due on the loan.

**B. Bankruptcy Petition**

Plaintiff argues that Borrower's filing of a voluntary petition under the Bankruptcy Code also constituted a "Full Recourse Event," triggering Guarantors' liability for the full amount of the loan. Guarantors contend that because the petition was subsequently determined to have been unauthorized, the bankruptcy is void *ab initio*, and thus, no "Full Recourse Event" occurred.

Plaintiff has the better argument. A "Full Recourse Event" occurs when Borrower "files a voluntary petition under the U.S. Bankruptcy Code." Loan Agreement § 17, Pl.'s Br. Ex. 3. A bankruptcy petition is considered "filed" when it is placed in possession of the Clerk of the Court. *In re Domaleczny*, 142 B.R. 287, 288-89 (Bankr. N.D. Ill. 1992);

9

*see also* Fed. R. Bankr. P. 1002(a). It is undisputed that on May 17, 2011, Borrower's attorney submitted a voluntary bankruptcy petition on Borrower's behalf in the Bankruptcy Court for the Eastern District of Michigan. *See* Pl.'s Br. Ex. 12. Thus, the petition was "filed," despite the lack of proper authorization. Borrower's filing of a voluntary bankruptcy petition was a "Full Recourse Event" under the Guaranty, and triggered Guarantors' liability for the full amount of the loan.

Guarantors argue that because the filing was not properly authorized, it is void *ab initio*. They have failed to provide any legal authority stating this directly; rather, they derive this conclusion from decisions concerning subject matter jurisdiction. The parties cite conflicting authorities with respect to the question of whether an unauthorized petition vests the bankruptcy court with subject matter jurisdiction. *Compare In re Delta Starr Broad., L.L.C.*, 422 Fed. App'x 362, 368 (5th Cir. 2011) (bankruptcy court would lack jurisdiction over an unauthorized petition) *with In re Comscape Telecommunications, Inc.*, 423 B.R. 816, 819 (Bankr. S.D. Ohio 2010) (bankruptcy court has jurisdiction over case even where petition is allegedly unauthorized). The Court does not believe, however, that jurisdiction is the dispositive issue in this case. The Guaranty does not state that liability arises only from the filing of a bankruptcy petition that vests jurisdiction in the bankruptcy court; rather, it simply provides that a "Full Recourse Event" occurs when Borrower "files a voluntary petition." Loan Agreement § 17, Pl.'s Br. Ex. 3. Moreover, the Court is not aware of any legal authority holding that where the bankruptcy court lacks subject matter

10

jurisdiction over the petition, the petition is void *ab initio*.[3]  The subsequent dismissal of the petition in this case did not render Borrower's petition void.

The Court also finds the Sixth Circuit's decision in *111 Debt Acquisition Holdings, LLC v. Six Ventures Ltd.*, 413 Fed. App'x 824 (6th Cir. Feb. 7, 2011), persuasive with respect to this issue.  That case involved a similar guaranty agreement providing that the guarantors would be liable for the full amount of the debt in the event that the borrower filed a bankruptcy petition.  The borrower subsequently filed a bankruptcy petition, but one of the guarantors objected to the filing, arguing that it was not authorized under the organizational documents of the borrower.  The bankruptcy court found that the petition was unauthorized and dismissed it.  The creditor sought to collect on the guaranty, arguing that the bankruptcy filing triggered the guarantors' liability for the full amount of the debt.  The district court granted summary judgment for the creditor, and the guarantors appealed, arguing that the unauthorized petition should be treated as though it never happened.  The Sixth Circuit rejected this argument:

> [The creditor] says that [guarantors'] argument is misplaced because the loan agreement and guaranty are the governing documents to the present matter, not [the borrower's] internal documents. [The creditor] is correct that the loan and guaranty documents, not [the borrower's] internal documents, govern the present matter.

*Id.* at 830.  The Sixth Circuit accordingly affirmed the district court's grant of summary judgment for the creditor.  The court's holding that "the loan and guaranty documents, not [the borrower's] internal documents, govern the present matter" can only be interpreted to

---

[3] Guarantors cited case law holding that a *judgment* entered by a court lacking jurisdiction is void, but the Court is not persuaded that the same principle extends to the *petition*.

11

mean that an unauthorized bankruptcy petition, while perhaps subject to dismissal, is not void *ab initio*. The Guaranty did not expressly provide that only the filing of an authorized petition was a "Full Recourse Event," and the Court cannot read such a condition into the agreement. The unauthorized filing of a bankruptcy petition triggered Guarantors' liability under the Guaranty, and Plaintiff must be granted summary judgment with respect to its claims.

### C. Sale of the Property

Guarantors assert that on December 8, 2011, the property was sold at a sheriff's sale, and Plaintiff was the successful bidder in the amount of $20 million. Guarantors argue that Plaintiff is entitled to only one recovery on the loan, and thus, Plaintiff's recovery on the Guaranty should be reduced by $20 million. "'[A] sale on statutory foreclosure satisfies the debt secured by the foreclosed mortgage to the extent of the proceeds of the sale.'" *New York Life Ins. Co. v. Erb*, 276 Mich. 610, 613, 268 N.W. 754, 755 (Mich. 1936) (quoting *Moore v. Smith*, 95 Mich. 71, 76, 54 N.W. 701, 703 (Mich. 1893)). This rule also applies to reduce the amount owed under a guaranty agreement after collateral has been sold at a foreclosure sale. *See Crown Life Ins. Co. v. Hicks*, No. 93-71482, 1994 U.S. Dist. LEXIS 5562, at *13-14 (E.D. Mich. Jan. 7, 1994) (foreclosure sale of property reduced the indebtedness by the amount paid, partially satisfying guarantors' liability). The Court concludes that the foreclosure sale satisfied in part the debt owed under the Promissory Note, reducing the amount of the Guaranteed Obligations. Plaintiff's recovery under the Guaranty must therefore be reduced by the foreclosure sale price.

Guarantors assert that the foreclosure sale "raises the issue of whether the amount of

Plaintiff's bid was substantially less than the true value of the property, which is a genuine issue of material fact regarding the amount of damages Plaintiff seeks." Defs.' Resp. Br. 3 (citing Michigan Compiled Laws § 600.3280). This argument lacks merit. Guarantors contractually waived all defenses to recovery, Guaranty §§ 2.1(c)(v) and (f), and such waivers are enforceable. *KSI Capital Corp. v. Pagan*, No. 07-12501, 2008 U.S. Dist. LEXIS 56460, at *7-8 (E.D. Mich. July 25, 2008); *Crown Life Ins. Co.*, 1994 U.S. Dist. LEXIS 5562, at *15-16. Furthermore, even if this defense were properly raised, the party asserting the defense bears the burden of establishing that a higher price should have been obtained upon sale. *See Stewart v. Eaton*, 287 Mich. 466, 485, 283 N.W. 651, 658 (Mich. 1939). Guarantors have failed to present any evidence showing that the sale price here was inadequate.

## IV. Conclusion

The Court concludes that one or more "Full Recourse Events" have occurred as defined in the Guaranty. Thus, Guarantors are obligated to make payment of the deficiency under the Guaranty.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for partial summary judgment is **GRANTED**.

                                                    s/PATRICK J. DUGGAN
                                                    UNITED STATES DISTRICT JUDGE

Copies to:
James L. Allen, Esq.                     Anthony J. Kochis, Esq.
Eric C. Bartley, Esq.                     Scott A.Wolfson, Esq.
Kevin S. Toll, Esq.
Sheri B. Cataldo, Esq.